**BRIAN T. DUNN, ESQ. (SBN 176502)**
Email: bdunn@cochranfirm.com
**MEGAN R. GYONGYOS, ESQ. (SBN 285476)**
Email: mgyongyos@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010-3856
Telephone: (323) 435-8205
Facsimile: (323) 282-5280

Attorneys for Plaintiff

**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Bl.
Suite 1010
(323)435-8205

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL BRACY, an individual | **CASE NO.: CV13-09350-JC** |
| Plaintiff, | [Assigned for all purposes to the Hon. Jacqueline Chooljian, United States Magistrate Judge] |
| v. | |
| DETECTIVE CARL WORRELL; DETECTIVE DONALD WALTHERS; DETECTIVE RICHARD GUZMAN; DETECTIVE RANDY RICO; and DOES 1through 10, inclusive, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| Defendants. | **Hearing:** |
| | Date:        February 28, 2017 |
| | Time:        9:30 a.m. |
| | Courtroom:  20 |
| | **Judgment Entered: December 19, 2016** |

**TO THIS HONORABLE COURT, AND TO DEFENDANTS AND THEIR**
**ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 28, 2017, at 9:30 a.m. or as soon thereafter as this matter may be heard in Courtroom 20 of the United States District Court for the Central District of California, Plaintiff EMMANUEL BRACY will, and hereby does, move this Honorable Court for a new trial. This Motion is made pursuant to Fed. R. Civ. P. 59(a). This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Brian T. Dunn and Exhibits filed concurrently herewith, the file and records of the within action, and any such additional oral or documentary evidence as may be evaluated by the Court at the hearing of this matter.

On January 9, 2017, Plaintiff's counsel sent written correspondence to counsel for Defendants pursuant to Local Rule 7-3 concerning all of the issues set forth in the instant Motion. The parties were unable to arrive at a stipulation which would obviate the need for the filing of this Motion or any aspect thereof.

DATED: January 17, 2017          Respectfully submitted,

                                **THE COCHRAN FIRM CALIFORNIA**


                                By: /s/ Brian T. Dunn_____
                                        BRIAN T. DUNN
                                        MEGAN R. GYONGYOS
                                        Attorneys for Plaintiff, EMMANUEL
                                        BRACY

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

i

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RELEVANT PROCEDURAL HISTORY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Relevant Motions in Limine Filed by Plaintiff*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Relevant Motions in Limine Filed by Defendants*. . . . . . . . . . . . . . . . . . . . . . . . . . 2

*The Court's Rulings on the Parties' Motions in Limine*. . . . . . . . . . . . . . . . . . . . . 3

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**I.    ERRONEOUS EVIDENTIARY RULINGS ARE GROUNDS FOR A NEW TRIAL**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**II.   THE COURT ERRED IN PERMITTING THE TESTIMONY OF "GANG EXPERT" SAMUEL MARULLO**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **A.    Samuel Marullo's Testimony Improperly Ascribed "Guilt by Association" to Plaintiff Bracy**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **B.    Samuel Marullo's Testimony Violated the Court's Prior Rulings on Plaintiff's Motions in Limine**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**III.  THE COURT ERRED IN ADMITTING STILL IMAGES OF THE SURVEILLANCE CAMERA RECORDING OF THE CHECK N' GO ROBBERY AT TRIAL**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**IV.   THE COURT ERRED IN LIMITING THE TESTIMONY OF PLAINTIFF'S POLICE PRACTICES EXPERT AT TRIAL**. . . . . . . . . . . . . . . . . . . . . . . . . 15

**V.    THE COURT ERRED IN ALLOWING DEFENDANTS' POLICE PRACTICES EXPERT TO TESTIFY REGARDING THE NATURE AND TYPE OF BLOOD SPATTER WITHIN THE BRACY VEHICLE AND THE INFERENCES AND CONCLUSIONS THAT COULD BE DRAWN THEREFROM**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

///

///

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**A.**     **Sergeant Markel's Opinion Testimony Regarding Blood Spatter Evidence Was Outside the Scope of His Fed. R. Civ. P. 26(a)(2)(C) Designation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**B.**     **Sergeant Markel Was Not Qualified to Offer Opinions Concerning Blood Spatter Evidence at Trial** . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**VI.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarez v. Hill*
    518 F.3d 1152 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Beaver v. Tarsadia Hotels*
    2011 U.S. Dist. LEXIS 140518 (D.C. Cal. Dec. 6, 2011). . . . . . . . . . . . . . . . . 17

*Billington v. Smith*
    292 F.3d 1177 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Castro v. County of Los Angeles*
    2015 U.S. Dist. LEXIS 103945 (C.D. Cal. Aug. 3, 2015). . . . . . . . . . . . . . . . . 12

*Cotton v. City of Eureka*
    2010 U.S. Dist. LEXIS 136270 (N.D. Cal. Dec. 14, 2010). . . . . . . . . . . . . . . . 13

*Galindo v. Tassio*
    2014 U.S. Dist. LEXIS 84396 (N.D. Cal. June 19, 2014). . . . . . . . . . . . . . 5, 12, 13

*Glenn v. Washington County*
    673 F.3d 864 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

*Graham v. Connor*
    490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hayes v. County of San Diego*
    736 F.3d 1223 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Huizar v. City of Anaheim (Estate of Diaz)*
    840 F.3d 592 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12

*In re Weingarten*
    2013 U.S. Bankr. LEXIS 317 (C.D. Cal. Jan. 25, 2013). . . . . . . . . . . . . . . . 17, 18

*Jinro Am., Inc. v. Secure Invs., Inc.*
    266 F.3d 993, 1004 (9t Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

*Kennedy v. Lockyer*
    379 F.3d 1041 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Mitchell v. Prunty*
    107 F.3d 1337 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Molina v. City of Visalia*
    2016 U.S. Dist. LEXIS 128975 (E.D. Cal. Sept. 16, 2016). . . . . . . . . . . . . . . . . 12

*Moreno v. LA County Sheriff's Dep't*
    2015 U.S. Dist. LEXIS 113425 (C.D. Cal. Aug. 24, 2015). . . . . . . . . . . . . . . . 5

*Ruvalcaba v. City of Los Angeles*
    64 F.3d 1323 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sagana v. Tenorio*
    384 F.3d 731 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Santamaria v. Horsley*
    188 F.3d 1280 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. City of Hemet*
    394 F.3d 689 (9tg Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 19

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Garcia*
    151 F.3d 1243 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Valtierra v. City of Los Angeles*
    99 F. Supp. 3d 1190 (C.D. Cal. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Federal Rules**

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 26.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 59.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This 42 U.S.C. § 1983 case arose out of the shooting of Plaintiff Emmanuel Bracy by Los Angeles Police Department Detectives Richard Guzman, Donald Walthers, Carl Worrell, and Randy Rico, which occurred on the morning of June 24, 2010. It is undisputed that the involved detectives fired repeatedly into the motor vehicle driven by Plaintiff after Plaintiff's vehicle and the detectives' vehicles came to rest following the detectives' deployment of a vehicle containment technique which disabled Plaintiff's vehicle. Plaintiff was seriously injured in the shooting. It is undisputed that approximately ten minutes before the shooting, Plaintiff robbed a "Check n Go" check cashing business at gunpoint. Although Plaintiff was under surveillance by LAPD detectives at the time of the robbery, it is undisputed that no detective witnessed the robbery, nor did any detective witness any of the events occurring inside the Check n' Go when the robbery occurred. It is further undisputed that Detectives Guzman, Walthers, Worrell, and Rico had limited information concerning Plaintiff's gang membership. That information consisted of a statement in a surveillance worksheet that was provided to them on the morning of the subject shooting incident that Plaintiff was a documented "Denver Lane" gang member.

## RELEVANT PROCEDURAL HISTORY

### *Relevant Motions in Limine Filed by Plaintiff*

On August 18, 2015, Plaintiff filed a motion in limine that sought to exclude: (1) evidence that Plaintiff was in a street gang; (2) music videos evidencing Plaintiff's gang membership; (3) evidence that gang members other than Plaintiff engaged in criminal activities pursuant to their involvement in a street gang; and (4) evidence of other crimes, misdeeds, and bad acts attributable to African American South Los Angeles street gangs. (Dkt. No. 66, Plaintiff's Motion in Limine No. 1.) Defendants opposed the motion. (Dkt. No. 81.)

///

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1

Plaintiff also filed a motion in limine to preclude Defendants' non-retained gang expert from testifying to the following opinions at trial: (1) opinions that Plaintiff is a gang member; (2) opinions that gang members who commit crimes with firearms are taught/trained to create "stash" or hiding spots in vehicles in case they are detained/searched by the police; (3) opinions that gang members know that if they are caught with a firearm they face enhancements and additional jail time; (4) opinions that there is a general belief among gang members that there is little chance of beating criminal charges when caught with a gun; (5) opinions that gang members are taught to use methods to hinder police from connecting them to a gun, including using a cloth to cover the grip/butt of a gun used in a crime; (6) opinions that gang members train other gang members to quickly hide guns when encountering police; and (7) opinions discussing discipline in gang subculture, including discipline administered for losing a gang gun. (Dkt. No. 67, Plaintiff's Motion in Limine No. 2.) Defendants opposed the motion. (Dkt. No. 81.)

Plaintiff additionally filed a motion in limine to exclude the surveillance camera depicting the robbery of the Check n' Go check cashing business. (Dkt. No. 71, Plaintiff's Motion in Limine No. 5.) Plaintiff also filed a related motion in limine to exclude evidence concerning the Check n' Go robbery and other robberies Plaintiff was suspected of having committed that was not known to the Defendant Detectives at the time of the officer-involved shooting. (Dkt. No. 72, Plaintiff's Motion in Limine No. 6.) Defendants opposed these motions. (Dkt. Nos. 83, 84.)

### *Relevant Motions in Limine Filed by Defendants*

On August 18, 2015, Defendants filed a motion in limine to preclude Roger Clark, Plaintiff's police practices expert, from testifying regarding certain opinions at trial, including Mr. Clark's third opinion, which appeared on page 25 of his Rule 26 Report:

"[T]he defendant SIS Detectives were not justified in their use of lethal force in this set of facts because of their own apparent willful reckless actions that needlessly provoked a sequence of events leading to the catastrophic shooting

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

2

1  and multiple wounding of Mr. Bracy (who was not armed when he was shot).

2  This includes the fact that Mr. Bracy did not pose a credible threat to life that

3  could not have easily been totally mitigated by the required tactical steps as

4  outlined in further detail below."

5      Defendants additionally sought to preclude Mr. Clark from testifying regarding

6  related opinions set forth on pages 25-29 of his Rule 26 Report concerning the required

7  tactical response to the incident involving Plaintiff. (Dkt. No. 70, Defendants' Motion in

8  Limine No. 7.) Plaintiff opposed this. (Dkt. No. 100.)

9                *The Court's Rulings on the Parties' Motions in Limine*

10     On June 7, 2016, the Court held a hearing on the parties' motions in limine. (Dkt.

11  No. 121.) The Court denied Plaintiff's Motion in Limine No. 1 as to evidence of

12  Plaintiff's gang membership without prejudice to objections to specific evidence of the

13  same at trial, and granted the motion as to the remaining evidence sought to be excluded.

14  (Dkt. No. 121-1.) The Court denied Plaintiff's Motion in Limine No. 2 without prejudice

15  to objections to specific evidence at trial. (*Id.*) The Court deferred its ruling on Plaintiff's

16  Motion in Limine No. 5. (*Id.*) The Court denied Plaintiff's Motion in Limine No. 6 as to

17  certain matters referenced in Defendants' opposition to the motion and in paragraph 3 of

18  the supporting declaration filed concurrently therewith, granted the motion as to

19  unspecified evidence of information concerning prior robberies not known to Defendant

20  Detectives at the time of the shooting, deferred its ruling as to evidence concerning the

21  robbery immediately preceding the shooting, and ordered the parties to file supplemental

22  briefs regarding the deferred portion of the ruling. (*Id.*) The Court denied Defendants'

23  Motion in Limine No. 7 as to the third opinion on page 25 of Mr. Clark's Rule 26

24  Report, but afforded the parties leave to submit supplemental briefing regarding the

25  denial of the motion in that regard. (*Id.*)

26     On July 7, 2016, the parties filed supplemental briefs regarding Plaintiff's Motion

27  in Limine in No. 6. (Dkt. Nos. 123, 129.) Defendants also filed a supplemental brief

28  regarding Defendants' Motion in Limine No. 7. (Dkt. No. 124.) On September 20, 2016,

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

3

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1  the Court issued its final rulings on Plaintiff's Motion in Limine Nos. 5 and 6 and

2  Defendants' Motion in Limine No. 7. (Dkt. No. 132-1.) The Court granted Plaintiff's

3  Motion in Limine No. 5 in part and denied it in part, ruling that Defendants would be

4  permitted to introduce three still images from the surveillance camera recording of the

5  Check n' Go robbery. (*Id.*) The Court granted Plaintiff's Motion in Limine No. 6 as to

6  evidence concerning the Check n' Go robbery other than three still images from the

7  surveillance camera recording of the robbery, foundational testimony concerning the

8  images, and the identification of Plaintiff in those images. (*Id.*) The Court granted

9  Defendants' Motion in Limine No. 7 as to the third opinion on page 25 of Mr. Clark's

10  Rule 26 Report and all opinions on pages 25-29 of that report not addressing the

11  Defendant Detectives' failure to identify themselves as police officers. (*Id.*)

12      On November 9, 2016, Plaintiff filed a trial brief addressing the impact of *Estate*

13  *of Diaz v. City of Anaheim*, a Ninth Circuit case discussing the admissibility of gang

14  evidence decided after motions in limine were filed and rulings thereon were made, on

15  the admissibility of the expert testimony and opinions of Defendants' gang expert. (Dkt.

16  No. 154.) In that brief, in an attempt to preclude the testimony of Defendants' gang

17  expert, Plaintiff specifically stated a willingness to stipulate that he was a gang member.

18  (Dkt. No. 154, at p. 5.) Defendants filed an opposition to Plaintiff's Trial Brief on

19  November 10, 2016. (Dkt. No. 159.)

20                                **ARGUMENT**

21  **I.     ERRONEOUS EVIDENTIARY RULINGS ARE GROUNDS FOR A NEW**

22  **        TRIAL**

23      Following a jury trial, a court may, on the motion of a party pursuant to Rule 59 of

24  the Federal Rules of Civil Procedure, "grant a new trial on all or some of the issues" in

25  an action "for any reason for which a new trial has heretofore been granted in an action

26  at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Erroneous evidentiary rulings which

27  substantially prejudice a party are a basis for a new trial. *See Ruvalcaba v. City of Los*

28  *Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

## II.   THE COURT ERRED IN PERMITTING THE TESTIMONY OF "GANG EXPERT" SAMUEL MARULLO

### A.   Samuel Marullo's Testimony Improperly Ascribed "Guilt by Association" to Plaintiff Bracy

The Ninth Circuit has repeatedly affirmed that evidence related to gang involvement will almost always be prejudicial, and will constitute reversible error. *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004). Evidence of gang membership may not be introduced to prove intent or culpability. *Id.* As affirmed by the Ninth Circuit in *Kennedy*, "[o]ur cases make it clear that evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error." The use of gang membership evidence to imply "guilt by association" is impermissible and prejudicial. *Id.*; *see also United States v. Garcia,* 151 F.3d. 1243, 1244-46 (9th Cir. 1998) (reversing a criminal conviction and stating that it would be contrary to the fundamental principles of our justice system to find a defendant guilty on the basis of his association with gang members). California district courts have consistently followed this mandate in civil cases, and routinely find that the probative value of gang evidence is marginal and substantially outweighed by the risk that the jury will draw impermissible character inferences. *See Galindo v. Tassio*, 2014 U.S. Dist. LEXIS 84396, at *4 (N.D. Cal. June 19, 2014) ("[The] probative value [of decedent's alleged gang affiliation] is marginal at best and is substantially outweighed by the risk that the jury draws impermissible character inferences, is misled from the more critical issues in the case, and attaches 'guilt by association' to [decedent]"); *Moreno v. LA County Sheriff's Dep't*, 2015 U.S. Dist. LEXIS 113425, at *6-7 (C.D. Cal. Aug. 24, 2015) ("While decedent's alleged gang affiliation may have contributed to County's assessment [of inmate classification] and therefore is relevant, under Rule 401, to determine the propriety of the County's assessment, there is fairly little probative value in disclosing decedent's alleged gang affiliation at trial. Indeed, the probative value of decedent's alleged gang affiliation is marginal and is substantially outweighed by the risk that the jury will draw

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

5

impermissible character inferences.").

The Ninth Circuit very recently affirmed this principle in *Huizar v. City of Anaheim (Estate of Diaz)*, which addressed the admissibility of inflammatory evidence of the decedent's gang membership, including expert testimony from the defendants' "gang expert," at a trial on a 42 U.S.C. § 1983 excessive force claim arising out of the fatal shooting of the plaintiffs' decedent, Manuel Diaz, by Anaheim Police Department officers. *See Huizar v. City of Anaheim (Estate of Diaz)* 840 F.3d 592, 597-98 (9th Cir. 2016).

The defendant officers in *Diaz* were on routine patrol in known gang territory when they encountered Diaz, who was a gang member. *Id.* at 595-96. Prior to trial, the parties filed motions in limine regarding evidence of Diaz's gang affiliation and the proposed testimony of the defendants' gang expert. *Id.* at 597. The district court ruled that evidence that the area where the defendant officers encountered Diaz was a known gang area was relevant to the issues of liability, but found that evidence of Diaz's gang membership was only relevant to the issue of the plaintiffs' damages. *Id.* Although the district court also allowed the defendants' gang expert to opine on Diaz's gang membership, the district court excluded as unduly prejudicial testimony about gang activities in general, that the area where the shooting occurred was part of Diaz's gang's turf, and Diaz's specific gang activities. *Id.*

In addition to seeking exclusion of the proffered gang evidence and expert testimony, the plaintiffs sought bifurcation of the issues of liability and damages on the ground that bifurcation would prevent the challenged gang evidence and testimony from tainting the jury's consideration of the reasonableness of the defendant officers' use of deadly force. *Id.* The district court declined to bifurcate the issues of liability and compensatory damages, and at trial, "wide-ranging testimony" from the defendants' gang expert and photographs depicting Diaz's gang tattoos and Diaz posing with guns and throwing gang signs was admitted. *Id.* at 597-600. After the jury returned a verdict for the defendants, the plaintiffs appealed.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

6

The Ninth Circuit reversed the judgment and remanded the case for a new trial, finding that the district court had abused in its discretion in failing to bifurcate the issues of liability and compensatory damages. *Id.* at 595, 606. The Ninth Circuit began its analysis by discussing the evidence and testimony at issue, which included photographs of Diaz posing with firearms and making gang signs that had been introduced at trial, and the testimony of the defendants' gang expert, who had expounded on the activities and customs of violent gangs and described Diaz's gang moniker, criminal history, and tattoos in great detail. *Id.* at 601. The Ninth Circuit noted that "[i]t is hard to see how most of this testimony was relevant even to damages," and further noted that "there was also highly prejudicial testimony that was under any circumstances not relevant to liability or damages," in particular, the gang expert's testimony that "gang members require access to firearms to 'use them in self-defense . . . against police officers' and pose with firearms publicly to show 'that they have means to commit crimes . . . against law enforcement.'" *Id.* at 601-02.

The Ninth Circuit then noted that it "ha[d] recognized time and time again that gang evidence has the potential to be particularly prejudicial." *Id.* at 602 (citing and quoting *Kennedy*, *supra*)). It then held that evidence of Diaz's gang affiliation had "marginal, if any, probative value as to damages, and none as to liability." *Id.* at 603. It also held that if the party challenging the introduction of gang evidence and expert testimony is willing to stipulate to the fact of gang membership, "no expert testimony about gangs–such as gang activities, tattoos, or monikers–should be admitted." *Id.*

### *The Testimony of "Gang Expert" Samuel Marullo*

Over Plaintiff Bracy's objections, this Court erroneously permitted the testimony of Defendants' "gang expert," Samuel Marullo, who, in summary, gave the following opinions on behalf of Defendants:

    (1)    That gang members who commit crimes with firearms are taught/trained to create "stash" or hiding spots in vehicles in case they are detained/searched by police;

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

7

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

(2)    That the hiding spot in Plaintiff Bracy's vehicle that was used by Mr. Bracy is consistent with the activities of gang members who commit crimes with firearms;

(3)    That gang members know that if they are caught with a firearm, they face an enhancement and additional time;

(4)    That there is a general belief among gang members about getting caught with a gun used in a crime by the police that they would be unable to avoid prosecution and would have little to no chance of "beating" charges;

(5)    That gang members are taught to use methods to hinder police from connecting them to a gun, including using a cloth to cover the grip/butt of a gun used in a crime;

(6)    That gang members train how to quickly hide guns when stopped or encountering the police, even in rapidly evolving situations; and

(7)    That in the gang subculture, discipline is imposed on gang members who lose a gang gun.

In summary, Defendants' proffer of Samuel Marullo's testimony is illustrated with the following syllogism:

A.    Gang members stash guns;

B.    Bracy is a gang member;

C.    Therefore, Bracy's gang membership makes it more likely that Bracy stashed a firearm *after* he was repeatedly shot by SIS detectives.

This proffer of admissibility fails on many levels. Most fundamentally, it rests on the false premise of gang members' guilt by association, a notion which, as explained above, has been thoroughly repudiated by the Ninth Circuit. Essentially, defendants were allowed to assert that the mere fact of Plaintiff Bracy's *membership* in a street gang necessarily tended to prove that his disputed actions, *e.g.*, stashing a gun *after* the officer-involved shooting, would have been more likely to have occurred because other gang members have stashed guns in the past. Clearly this principle rests on the concept

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

of guilt by association through gang membership, and, standing alone, the admission of this testimony constituted reversible error. Moreover, a cursory analysis of this proffer reveals the entire absence of any conceivable probative value for this evidence. Aside from the prior robberies, there was no evidence proffered, or known to the involved detectives, which would tend to indicate a propensity in Plaintiff Bracy (or his gang) to stash guns when confronted by law enforcement. Indeed, the entire universe of gang related information known to the involved detectives was contained in the surveillance worksheet that was provided to them on the morning of the subject shooting incident, which indicated that Mr. Bracy was a documented "Denver Lane" gang member. Even if the Court were to accept the false and illogical concept of Plaintiff Bracy's guilt by association through his gang membership, the involved detectives had no information concerning any relevant bad acts of the "Denver Lane" gang aside from what was known to them in their investigation into the series of robberies which precipitated their surveillance of Mr. Bracy, and in this regard, there was no information available to them concerning any prior stashing of guns, or any propensity among the members of this gang to stash guns.

This flagrant error is further demonstrated by the nature of the exact argument which Defendants sought to advance with this testimony. As the Court may recall, Plaintiff's entire theory rested on the stipulated fact that Plaintiff stashed the gun, and Plaintiff's case rested on evidence that the gun had been stashed prior to the shooting, as demonstrated by the absence of blood and glass on the weapon. Defendants sought to argue that Plaintiff stashed the gun *after* the shooting. Hence, even the false concept of guilt by association was not proven by Defendants, who proffered no evidence that gang members stash guns (when fired upon in officer-involved shootings) during the entire direct examination of Samuel Marullo. As the court may recall, on cross-examination, Samuel Marullo could only point to *one single instance* in which a purported gang member stashed a gun following an officer-involved shooting, and this single instance of gang activity is not sufficient to establish the consistent character of gang activity

sufficient to establish the manner guilt by association which the Court erroneously found to be probative. This type of reasoning was specifically repudiated by the Ninth Circuit in *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir. 1997), *overruled on other grounds by Santamaria v. Horsley*, 188 F.3d 1280 (9th Cir. 1998), in which a criminal defendant's murder conviction for aiding and abetting a gang related murder was reversed. In *Mitchell,* the state referenced a gang feud as evidence of the defendant's intent in aiding and abetting a vehicular homicide, and the Ninth Circuit rejected that argument as follows:

> The state's argument smacks of guilt by association. Except in *West Side Story*, gang members do not move in lock-step formation. Gang movements are, in fact, often more chaotic than concerted. *See* Jeffrey J. Mayer, *Individual Moral Responsibility and the Criminalization of Youth Gangs*, Wake Forest L. Rev. 943, 949-50 (1993) (describing gangs as "disorganized" and decrying "efforts to prosecute . . . gang members on the basis of social ties," as opposed to "traditional legal principles," as a "panic response"). Membership in a gang cannot serve as proof of intent, or of the facilitation, advise, aid, promotion, encouragement or instigation needed to establish aiding and abetting. To hold otherwise would invite absurd results. Any gang member could be held liable for any other gang member's act at any time so long as the act was predicated on the "common purpose of fighting the enemy." *Curtin v. Lataille,* 527 A.2d 1130, 1133 (R.I. 1987).

107 F.3d at 1342.

Hence, the admission of the testimony of Samuel Marullo constituted reversible error by improperly attributing Plaintiff Bracy's guilt by association with other gang members as evidence of his post-shooting conduct.

///

///

///

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**B.** **Samuel Marullo's Testimony Violated the Court's Prior Rulings on Plaintiff's Motions in Limine**

On August 18, 2015, Plaintiff filed a motion in limine that sought to exclude: (1) evidence that Plaintiff was in a street gang; (2) music videos evidencing Plaintiff's gang membership; (3) evidence that gang members other than Plaintiff engaged in criminal activities pursuant to their involvement in a street gang; and (4) evidence of other crimes, misdeeds, and bad acts attributable to African American South Los Angeles street gangs. (Dkt. No. 66, Plaintiff's Motion in Limine No. 1.) The Court denied the motion as to evidence of Plaintiff's gang membership without prejudice to objections to specific evidence of the same at trial, and granted the motion as to the remaining evidence sought to be excluded. (Dkt. No. 121-1.) The testimony of "gang expert" Samuel Marullo introduced extensive evidence that gang members other than Plaintiff engaged in criminal activities pursuant to their involvement in street gangs, and extensive evidence of other crimes, misdeeds, and bad acts attributable to street gangs. As such, this testimony violated the Court's ruling on the Plaintiff's Motion in Limine No. 1, creating further grounds for a new trial.

**III.** **THE COURT ERRED IN ADMITTING STILL IMAGES OF THE SURVEILLANCE CAMERA RECORDING OF THE CHECK N' GO ROBBERY AT TRIAL**

This case exclusively concerned the reasonableness of the Defendant Detectives' uses of force against Plaintiff. "The reasonableness of a use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The relevant factors in the reasonableness inquiry include all of the circumstances known to the officers on the scene, such as "(1) the severity of the crime or other circumstances to which the officers were responding; (2) whether the plaintiff posed on immediate threat to the safety of the officers or to others; and (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Smith v. City of Hemet*, 394 F.3d 689,

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

701 (9th Cir. 2005) (citing *Graham*, 490 U.S. at 396). In some cases, the availability of alternative methods to subdue the plaintiff may also be considered. *Smith*, 394 F.3d at 701. It is well settled that facts not known to the officers on the scene are not relevant to the issue of whether the force used by the officers was reasonable under the circumstances. *See Hayes v. County of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (citing *Graham*, 490 U.S. at 396) ( suspect's intoxication not relevant to the determination of whether the defendant deputies' use of force was reasonable under *Graham v. Connor* because the deputies were unaware of the suspect's intoxication); *Glenn v. Washington County*, 673 F.3d 864, 873 & n.8 (9th Cir. 2011) (citing *Graham*, 490 U.S. at 396) ("We cannot consider evidence of which the officers were unaware — the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways."); *see also Estate of Diaz*, 840 F.3d at 598, 603 (holding that evidence of the decedent's gang affiliation had "marginal, if any, probative value as to damages, and none as to liability" where the defendant officer did not know that the decedent was gang member).

California district courts routinely exclude evidence of facts not known to the officers at the scene under *Graham*. *See Molina v. City of Visalia*, 2016 U.S. Dist. LEXIS 128975, at *10-12 (E.D. Cal. Sept. 16, 2016) (excluding evidence of the gang affiliations of suspects and witnesses where proffered as evidence of their subjective state of mind and motivation because the defendant officers were unaware of the same and had no knowledge of the bases therefor); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1195 (C.D. Cal. 2015) (holding that evidence of gang affiliation had "no bearing" on whether the defendant officers' actions were objectively reasonable if the officers were not aware of the gang affiliation at the time of the incident); *Castro v. County of Los Angeles*, 2015 U.S. Dist. LEXIS 103945, at *9, 21-23 (C.D. Cal. Aug. 3, 2015) (excluding evidence of the decedent's gang affiliation and criminal record because the officer did not know that the decedent was actually affiliated with a gang and was unaware of his criminal record); *Galindo v. Tassio*, 2014 U.S. Dist. LEXIS 84396, at *3-

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

8 (N.D. Cal. June 19, 2014) (excluding evidence of gang affiliation not known to the defendant officers at the time of the incident and further excluding evidence of criminal history offered to prove the suspect's subjective intent in reaching for a gun because that subjective intent was irrelevant to the reasonableness of the defendant officer's use of force); *Cotton v. City of Eureka*, 2010 U.S. Dist. LEXIS 136270, 2010 WL 5154945, at *16-19 (N.D. Cal. Dec. 14, 2010) (excluding evidence of the decedent's criminal history because the defendant officers had no knowledge of that criminal history at the time of the incident).

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

In the instant case it is undisputed that although Plaintiff Bracy was under surveillance by LAPD detectives at the time of the Check n' Go robbery, no detective witnessed the robbery, nor did any detective witness any of the events occurring inside the Check n' Go when the robbery occurred, and Plaintiff was willing to stipulate that: (1) a robbery had occurred, and (2) a gun was used during the robbery. On September 20, 2016, the Court issued its final rulings on Plaintiff's Motion in Limine Nos. 5 and 6. (Dkt. No. 132-1.) The Court granted Plaintiff's Motion in Limine No. 5 in part and denied it in part, ruling that Defendants would be permitted to introduce three still images from the surveillance camera recording of the Check n' Go robbery. (*Id.*) The Court granted Plaintiff's Motion in Limine No. 6 as to evidence concerning the Check n' Go robbery other than three still images from the surveillance camera recording of the robbery, foundational testimony concerning the images, and the identification of Plaintiff in those images. (*Id.*) At trial, three still images from the surveillance camera recording were repeatedly shown to the jury. Per the Court's prior ruling on Plaintiff's Motions in Limine Nos. 5 and 6, Plaintiff did not have an opportunity to be heard as to any further Rule 403 analysis as to those three still images, and Defendants were allowed to use whichever still images they chose, including images depicting Plaintiff Bracy pointing a gun at customers. One particularly inflammatory image depicted Plaintiff Bracy holding what appears to be a gun pointed downward at a female human figure in a supine position. (*See* Exhibit 1 to Declaration of Brian T. Dunn ["Dunn Decl."], still images

13

introduced at trial as Defendants' Exhibit 1019).

Any probative value that these images may have had was far outweighed by the prejudice engendered by the publication of the images, and their admission constituted reversible error. As defense counsel argued, these images were introduced to show that Plaintiff Bracy had some degree of proficiency and/or familiarity with a firearm, tending to make his possession of the firearm in the moments preceding the shooting, which occurred approximately ten minutes later, more likely. However, the fact that Plaintiff Bracy was prepared to stipulate that he used a gun during the robbery invalidates any probative value which can be gleaned by the publication of Plaintiff Bracy pointing a gun at persons within Check n' Go. It is obvious that when granted leave to select three still images, defense counsel selected the three most inflammatory images that could be extracted from the video recording, and the images of Plaintiff Bracy pointing a gun at persons in the store, unseen by any detective, offered positively no probative value with regard to his subsequent encounter with the involved detectives. Those images do not support, nor make more plausible, the defense's assertion that Plaintiff Bracy pointed a gun at any detective, as the circumstances of the robbery were undisputedly distinguishable from the situation facing Plaintiff Bracy and the involved detectives after the vehicle containment technique. Moreover, as stated above, the fact that Plaintiff Bracy was willing to stipulate that a gun had been used in the robbery renders the images of Plaintiff Bracy pointing a gun at persons in the store entirely superfluous and immaterial. Conversely, the prejudicial value of images depicting Plaintiff Bracy pointing a gun at persons within the store, particularly Plaintiff Bracy pointing a gun at a woman laying down in one instance, was extraordinary prejudicial, and likely induced certain jurors to entirely disregard the physical evidence in this case, which strongly suggested that Plaintiff Bracy was unarmed at the time of the shooting.

Hence, the admission of this evidence constituted reversible error, warranting a new trial.

///

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**THE
COCHRAN
FIRM
CALIFORNIA**
4929 Wilshire Bl.
Suite 1010
(323)435-8205

## IV.   THE COURT ERRED IN LIMITING THE TESTIMONY OF PLAINTIFF'S POLICE PRACTICES EXPERT AT TRIAL

The Court excluded proposed testimony of Roger Clark, Plaintiff's police practices expert, regarding certain tactics employed by the involved detectives at trial. The Court allowed Mr. Clark to testify regarding the involved detectives' failure to properly identify themselves during the incident, but did not permit him to testify concerning other aspects of the detectives' tactical response, including the deployment of the Vehicle Containment Technique ("VCT"). The exclusion of Mr. Clark's testimony was based on a motion in limine filed by the Defendants which sought to exclude certain of his opinions, including his opinion that:

> "[T]he defendant SIS Detectives were not justified in their use of lethal force
> in this set of facts because of their own apparent willful reckless actions that
> needlessly provoked a sequence of events leading to the catastrophic shooting
> and multiple wounding of Mr. Bracy  (who was not armed when he was shot).
> This includes the fact that Mr. Bracy did not pose a credible threat to life that
> could not have easily been totally mitigated by the required tactical steps as
> outlined in further detail below."

Necessarily excluded along with this opinion of Mr. Clark was testimony regarding the required tactical steps outlined in pages 26-29 of Mr. Clark's Rule 26 Report , as well as Mr. Clark's opinion that the involved detectives' "gross departure from required tactics . . . started a chain-reaction resulting in Mr. Bracy's shooting."

The exclusion of expert testimony regarding all aspects of the involved detectives' tactical response during the incident other than their identification of themselves as police officers was based on Defendants' argument that Mr. Clark's testimony regarding that tactical response amounted to and/or was offered in support of unpled claims or theories of liability which were not stated or otherwise encompassed by the allegations in Plaintiff's Complaint for Damages.

///

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

The operative Complaint alleged, in pertinent part, as follows:

> 15. This Complaint concerns an officer involved shooting which occurred during the morning hours of June 24, 2010, at or around the 12300 block of Osborne Street in the Pacoima area of the City of Los Angeles and County of Los Angeles. At approximately 11:30 a.m. on that date, Defendant DETECTIVES WORRELL, WALTHERS, GUZMAN, RICO, and other heretofore unknown Defendant DOE Officers, while acting under color of law and in the course and scope of their employment with the Defendant CITY and the Los Angeles Police Department, confronted Plaintiff as Plaintiff sat inside his vehicle. Without identifying themselves as police officers, Defendant DETECTIVES WORRELL, WALTHERS, GUZMAN, RICO, and the other Defendant DOE Officers yelled, "Put your hands up!" Plaintiff, believing that he was being robbed, complied with the command and raised his arms.

> 16. Without warning, Defendant DETECTIVES WORRELL, WALTHERS, GUZMAN, RICO, and the other heretofore unknown Defendant DOE Officers proceeded to assault and batter Plaintiff by acts which included, but were not limited to, repeatedly and unjustifiably discharging their department issued firearms at the person of Plaintiff, inflicting several gunshot wounds, including gunshot wounds to Plaintiffs back. At no time during the course of these events did Plaintiff pose any reasonable or credible threat of violence to the involved officers, nor did he do anything to justify the force used against him, and the same was deadly, excessive, unnecessary, and unlawful."

(Dkt. 1, at p. 5.)

Under Fed. R. Civ. P. 8(a), a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." "The theory of Rule 8(a), and of the federal rules in general, is notice pleading." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). The system of notice pleading prescribed by the Federal Rules of Civil Procedure "requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *see also Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case."). "[T]he pleading standard Rule 8 announces

does not require 'detailed factual allegations' . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is a plaintiff required to plead all facts necessary to carry his burden of proof at trial. *Beaver v. Tarsadia Hotels*, 2011 U.S. Dist. LEXIS 140518, at *25 (S.D. Cal. Dec. 6, 2011).

Moreover, a distinction should also be drawn between unpled *claims* and unpled *evidence*. In *In re Weingarten*, 2013 U.S. Bankr. LEXIS 317 (C.D. Cal. Jan. 25, 2013), the defendants filed a motion for reconsideration of the district court's denial of their motion for judgment. *See* 2013 U.S. Bankr. LEXIS 317, at *4-7. The motion for reconsideration attempted to limit the Court's consideration of the evidence to the particular facts set forth in the plaintiffs' complaint, and characterized other factual issues raised in the plaintiffs' case in chief but not specifically alleged in the complaint as "unpleaded claims." *See id.* at *8-9.

The district court disagreed with that characterization, stating that the challenged issues were not "unpled *claims*," but rather "unpled *evidence*" in support of the claim alleged in the plaintiffs' complaint. *See id.* at *10. The district court noted that under the defendants' theory – which asserted that unpled evidence supporting the plaintiffs' claims could not be considered at trial – "the Plaintiff would have to constantly amend the complaint as discovery continued and new evidence arose which supported or undercut specific actions which had been taken by the Defendant." *Id.* at *11. It then held that "[t]his is not the law nor could it be – it would simply make the litigation process even more unwieldy than it already is." *Id.*

In holding that unpled evidence could be considered at trial in the plaintiff's case in chief, the district court in *In re Weingarten* on relied on the system of notice of pleading prescribed by Fed. R. Civ. P. 8(a):

> The civil rules, as both the Supreme Court and this court have emphasized repeatedly, establish a system of notice pleading. [Citation.] A plaintiff need not plead specific facts or legal theories, but must offer only a short and plain statement upon which relief may be granted. [Citations.]

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

*Id.* at *11-12 (internal quotation marks omitted).

After discussing this system of notice pleading, the district court found that the plaintiffs in the case before it were not "seeking to introduce new claims, merely new evidence," and further found that "[g]iven the level of discovery and pretrial motions, there is no surprise that evidence on these 'unpleaded' issues was put forth," and "[t]here would have been no purpose in requiring that an amended complaint had to be filed." *Id.* at *14. It then held that the defendants' "'new claim' argument both confuses claims with evidence and is fundamentally at odds with the notice pleading philosophy underpinning the Federal Rules of Civil Procedure . . . ." *Id.*

Here, as in *In re Weingarten*, Mr. Clark's opinion testimony regarding the tactics employed by the involved detectives is not an unpled claim, but is rather unpled evidence offered in support of a claim that was pled. And like the argument of the defendants in *In re Weingarten*, Defendants' argument that Mr. Clark's opinion testimony regarding tactics should be excluded because Plaintiff's Complaint did not include allege a theory of provocation or state law negligence claim confuses claims with evidence and is at odds with the notice pleading system prescribed by the Federal Rules of Civil Procedure. For these reasons, the Court erred in limiting the testimony of Mr. Clark regarding the tactics employed by the involved detectives.

Any exclusion of Mr. Clark's opinion testimony regarding the tactical response of the involved detectives based on its claimed lack of relevance to the § 1983 excessive force claim alleged in Plaintiff's Complaint was also improper. In support of their motion in limine to exclude Mr. Clark's opinions regarding the tactics employed by the involved detectives, Defendants asserted that Plaintiff's Complaint was devoid of allegations supporting a provocation theory of liability under *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002),[1] and did not include a state law claim for negligence. That

---

[1] In *Billington*, the Ninth Circuit held that "where an officer intentionally or recklessly provokes a violent confrontation," he may be held liable for an objectively reasonable use of deadly force only if the

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

18

assertion incorrectly assumed that evidence regarding an officer's tactical response is only relevant where the plaintiff is proceeding on a *Billington* theory of provocation or negligence, and should not be admitted in § 1983 excessive force cases that do not allege a *Billington* claim or a claim for negligence under state law. As the Ninth Circuit noted in *Billington*:

> [C]ourts must judge the "reasonableness of a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." That goes for the events leading up to the shooting as well as the shooting. Our precedents do not forbid any consideration of events leading up to a shooting.

*Billington*, 292 F.3d at 1190. The Ninth Circuit has repeatedly held that expert testimony concerning proper police tactics and procedures is both relevant and admissible in § 1983 excessive force cases. *See Glenn v. Washington County*, 673 F.3d 864, 877 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005). In fact, the Ninth Circuit has endorsed exactly the sort of expert opinion that Mr. Clark proposed to offer in this case. *See Glenn*, 673 F.3d at 877 (holding that a rational jury could rely on an expert opinion that "the [defendants] escalated a static situation into an unnecessary and avoidable shooting" in assessing whether an officer's use of force was reasonable).

Accordingly, any exclusion of Mr. Clark's opinion testimony regarding the tactical response of the involved detectives based on its asserted lack of relevance to Plaintiff's § 1983 excessive force claim was also improper.

///

---

"provocation is an independent Fourth Amendment violation." *See id.* at 1189-91. In other words, "if an officer intentionally or recklessly provokes a violent response, and the provocation is an independent constitutional violation, that provocation may render the officer's otherwise reasonable defensive use of force unreasonable as a matter of law." *Id.* at 1190-91.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**V.   THE COURT ERRED IN ALLOWING DEFENDANTS' POLICE PRACTICES EXPERT TO TESTIFY REGARDING THE NATURE AND TYPE OF BLOOD SPATTER WITHIN THE BRACY VEHICLE AND THE INFERENCES AND CONCLUSIONS THAT COULD BE DRAWN THEREFROM**

**A.   Sergeant Markel's Opinion Testimony Regarding Blood Spatter Evidence Was Outside the Scope of His Fed. R. Civ. P. 26(a)(2)(C) Designation**

Under Fed. R. Civ. P. 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." If that witness is not one "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosure as to that witness must state: (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705"; and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii).

Defendants' expert designation for Sergeant Markel, their non-retained police practices expert, stated the following:

> "Sergeant Markel will testify that the Detectives' response to Plaintiff's conduct and behavior was reasonable, appropriate, lawful, and within accepted law enforcement standards. He is expected to testify that the use of deadly force and subsequent detention/arrest of the Plaintiff was reasonable, appropriate, lawful and within accepted law enforcement standards. He is also expected to testify that based on the totality of circumstances, including the nature of the incident, the information that the Detectives had, all contributed to the reasonableness and lawfulness of the use of deadly force. He will also testify about gang members creating hide spots in vehicles for contraband and weapons and their training in quickly stashing their weapons in these hide spots when stopped or approached by law enforcement."

(*See* Exhibit 2 to Dunn Decl., at p. 2.)

///

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl. Suite 1010
(323)435-8205

20

As to Sergeant Markel, there was no mention of any expertise in blood stain analysis, nor was there any mention of any proffered opinions concerning blood stain or blood pattern analysis. Conversely, the expert that Defendants designated on these issues was Anita Zannin, whose expert designation stated, in pertinent part, as follows:

> "The general substance of Ms. Zannin's testimony will address her analysis and interpretation of the bloodstains in the Lexus and how the bloodstains inform the condition of the vehicle during the incident, after the incident and Plaintiff's movement and contact inside the Lexus."

(*See* Exhibit 2 to Dunn Decl., at p. 6.)

It is clear that the expert designated by Defendants to testify concerning the analysis of bloodstains was Anita Zannin, not Sergeant Markel. Sergeant Markel's proffered testimony concerning blood stains and blood spatter analysis was therefore entirely outside the scope of the Rule 26 expert designation pertaining to him, and the admission of his testimony in this regard at trial was reversible error.

**B.     Sergeant Markel Was Not Qualified to Offer Opinions Concerning Blood Spatter Evidence at Trial**

A witness may only testify in the form of an opinion if he or she is "qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Before a witness may come "before the jury cloaked with the mantle of an expert," "care must be taken to assure that a proffered witness truly qualifies as an expert, and that such testimony meets the requirements of Rule 702." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).

By his own admission, Sergeant Markel had no expertise in blood patter analysis, and was not, and never has been, qualified as an expert to testify concerning the interpretation of bloodstains or blood spattter. As such, it was a clear abuse of discretion for the Court to allow this testimony, further warranting a new trial in this case.

///

///

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**VI.   CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in its entirety.


DATED: January 17, 2017          Respectfully submitted,

                                 **THE COCHRAN FIRM CALIFORNIA**


                                 By: /s/ Brian T. Dunn
                                 _____
                                        BRIAN T. DUNN
                                        MEGAN R. GYONGYOS
                                        Attorneys for Plaintiff, EMMANUEL
                                        BRACY

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205